AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
District of New Mexico

FILED
United States District Court
Albuquerque, New Mexico

Mitchell R. Elfers
Clerk of Court

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| Gordon ORTEGA | ) | Case No. |
| | ) | **25mj1202** |
| | ) | |
| | ) | |
| *Defendant(s)* | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____May 2, 2025_____ in the county of _____Bernalillo_____ in the _____ District of _____New Mexico_____, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1), (b)(1)(B) | Possession with intent to distribute 40 grams and more of fentanyl |
| 18 U.S.C. § 924(c)(1)(A)(i) | Possessing a firearm in furtherance of a drug trafficking crime |

This criminal complaint is based on these facts:

Please see the attached affidavit of BIA-DDE Special Agent Swanlynn Chico, which is incorporated by reference and has been reviewed by AUSA Lou Mattei.

☑ Continued on the attached sheet.

*Swanlynn Chico*
*Complainant's signature*

Swanlynn Chico, BIA-DDE Special Agent
*Printed name and title*

Telephonically sworn and electronically signed.

Date: _____May 4, 2025_____

*Laura Fashing*
*Judge's signature*

City and state:    Albuquerque, New Mexico

Honorable Laura Fashing, U.S. Magistrate Judge
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT**

I, Swanlynn Chico, being duly sworn, hereby deposes and states the following:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I am a law enforcement officer of the United States within the meaning of Title 18, United States Code (U.S.C.), Section 2510(7), that is, an officer of the United States who is empowered to conduct investigations of, and to make arrests for, the offenses enumerated in Titles 8, 18, 19, 21, and 31 of the United States Code, and other related offenses.

2.      I am a Special Agent ("SA") with the Bureau of Indian Affairs-Division of Drug Enforcement ("BIA-DDE") and have been employed as such since April of 2019.

3.      As part of my employment with BIA-DDE, I completed and graduated from Department of Interior—Investigator Training Program (DOI-ITP) at the Federal Law Enforcement Training Center in Brunswick, Georgia in August 2019. During my career as a federal law enforcement officer, I completed the Basic Narcotic Training (BNT) course in which I received training in the investigation and enforcement actions of drug crimes including but not limited to the unlawful possession and trafficking of methamphetamine, marijuana, cocaine, heroin, and other controlled substances.

4.      Prior to employment with BIA-DDE, I was employed as an Instructor/Training Lieutenant at the U.S. Indian Police Academy, Artesia, New Mexico from October 2018 until April 2019 where I trained approximately 1,500 Basic Law Enforcement candidates and served as a curriculum custodian and subject matter expert.  I was employed by the Bureau of Indian Affairs-Northern Cheyenne Police Department in Montana and Southern Pueblo Agency, in New Mexico from July 2014 until October 2018 where I served as a Patrol Officer. I am also a graduate of the Land Management Police Training Program (LMPT) at Federal Law Enforcement Training Center

in Artesia, New Mexico.

5.          Prior to this, I served two years as a Conservation Officer with the Mescalero Apache Tribe. Prior to that, I served in the United States Navy as a paralegal for 10 years, working with court martials and the Court clerk, and assisting with research for attorneys and other administrative duties.

6.          I am presently assigned to the BIA-DDE Regional Agent in Charge (RAC) Albuquerque, New Mexico, duty station.  In that capacity, my duties include investigating federal criminal offenses in the District of New Mexico and Indian Country.

7.          The information set forth in this affidavit has been derived from my own investigation or communicated to me by other sworn law enforcement officers or from other reliable sources. This affidavit does not set forth all of my knowledge related to this investigation. It is submitted for the limited purpose of establishing probable cause to support a criminal complaint charging Gordon ORTEGA with the following violations:

      a.      21 U.S.C. §§ 841(a)(1) and (b)(1)(B), that being possession with intent to distribute 40 grams and more of fentanyl; and

      b.      18 U.S.C. § 924(c)(1)(A)(i), that being possessing a firearm in furtherance of a drug trafficking crime.

## PROBABLE CAUSE

### I.      Traffic Stop of Vehicle

8.          On May 2, 2025, at approximately 2030 hours, Bureau of Indian Affairs (BIA) Officer of Justice Service (OJS)-Mescalero Agency, K-9 Law Enforcement Officer (LEO) Thomas Decker, along with K9 Foden, while on duty, in full uniform, displaying his badge of office, operating a marked police vehicle, and within the Sandia Reservation, was observing

traffic on the off ramp from I-25 North to Tramway Road where the Sandia Casino and Resort is located.

9.     K9 LEO Decker observed a silver Honda pickup truck approaching his stationary location with an inoperable driver's side headlight.  K9 LEO Decker pulled onto the roadway as the vehicle turned east onto Tramway toward the Sandia Resort.  K9 LEO Decker caught up with the vehicle entering the Sandia Resort property.  K9 LEO Decker initiated a traffic stop for the non-functioning headlight near the entrance to the parking garage on the Sandia Resort and Casino property.

10.     K9 LEO Decker approached the vehicle and could immediately smell what he recognized, based on his training and experience, to be the odor of burnt and raw marijuana emitting from the vehicle.  K9 LEO Decker asked the driver of the vehicle, identified as Craig WEAKLAND, to exit the vehicle.  The vehicle was also occupied by a male in the front passenger seat (later identified as Gordon ORTEGA) and a female in the rear passenger seat behind the driver (later identified as Rachelle BUYNON).

11.     K9 LEO Decker radioed for another officer to assist, then asked WEAKLAND about the presence of marijuana in the vehicle.  WEAKLAND confirmed marijuana was in the vehicle.  K9 LEO Decker asked WEAKLAND for consent to search his person.  WEAKLAND granted consent.  In WEAKLAND's front right pocket, K9 LEO Decker located a metal straw with burned ends and visible residue.  K9 LEO Decker recognized this, based on training and experience, as a device used to ingest fentanyl pills.  K9 LEO Decker asked WEAKLAND if the metal straw was used to ingest fentanyl pills.  WEAKLAND said yes.

12.     K9 LEO Decker then approached the passenger side of the vehicle to speak with ORTEGA and ask for his identification.  As K9 LEO Decker approached, ORETGA was shifting

3

around in his seat and then stopped when K9 LEO Decker opened the door. ORTEGA claimed

he did not have any identification but could provide his information verbally. While speaking

with ORTEGA, K9 LEO Decker observed a vial containing a white crystal-like substance[1]

located in an open shelf compartment above the glove box directly in front of ORTEGA. The

vial was in plain view, clearly visible to K9 LEO Decker.

13.    K9 LEO Barnes, who had also arrived on scene, asked BUYNON to step out of

the vehicle and spoke with her. She admitted to having fentanyl pills in her purse within the

vehicle.

14.    At this time, WEAKLAND, ORTEGA, and BUNYON were detained on scene

pending further investigation, and officers began a probable cause search of the vehicle.

II.    **Search of Vehicle**

A.    **Front Passenger Area**

15.    K9 LEO Decker began a search in the front passenger seat area, where ORTEGA

had been sitting. K9 LEO Decker opened a bag on the floorboard. The bag contained a large

amount of U.S. currency in numerous denominations, from $1 to $100 bills. The cash appeared

to be several thousand dollars, and a final count is still pending. Based on my training and

experience, this is consistent with the cash being drug proceeds.

16.    Within the same bag, K9 LEO Decker located another bag, which contained a

bag of crystal-like substance suspected to be methamphetamine. K9 LEO Barnes later weighed

the bag of suspected methamphetamine with a gross field weight of 4.4 grams.

17.    K9 LEO Decker also located two gray bags in the passenger side floorboard.

Within these bags, K9 LEO Decker located numerous small blue pills stamped with M-30. Based

---

[1] The vial observed by K9 LEO Decker was later tested by BIA-DDE SA Collin Pilcher, and it tested
presumptively positive for the presence of fentanyl. The vial had a field weight of 2.3 gross grams.

on my training and experience, the appearance of these pills is consistent with them being fentanyl pills.

18.     Along the passenger side floorboard, K9 LEO Decker located numerous other loose small blue pills consistent in appearance with fentanyl pills.  K9 LEO located pills in the passenger seat, between the seat, and under it.

19.     Under the passenger seat, K9 LEO Decker located a tan Sig Sauer P365 9mm handgun bearing serial number NRA029229.  A magazine with 10 rounds was inserted into the handgun, but no round was in the chamber.  The firearm appeared to be a genuine functioning firearm and was rendered safe.  Based on my training and experience, I know it is common for drug traffickers to possess firearms to protect themselves, their drug supplies, and their drug proceeds.

20.     Finally, officers located a bag stuffed partially through the center console area next to the front passenger seat.  K9 LEO Barnes retrieved the bag.  It contained a large amount of small blue M-30 pills, consistent in appearance with fentanyl pills.

21.     K9 LEOs Barnes and Decker weighed of all suspected fentanyl pills from the front passenger seat area.  In total, the pills had a field weight of approximately 140 gross grams.  Based on my training and experience, this quantity of fentanyl pills is consistent with distribution, not personal use.

**B.     Rear Passenger Area**

22.     While searching the rear passenger area, K9 LEO Barnes located a black backpack in the center floorboard near where BUYNON was seated.  Inside the black backpack was a Taurus 9mm handgun bearing serial number TLU48374 equipped with a laser sight.  The firearm appeared to be a genuine functioning firearm and was rendered safe.

23.    In the rear passenger seat, K9 LEO Barnes located a dark green duffle bag. Within the duffle bag, K9 LEO Barnes located a short-barreled black firearm with a vertical foregrip, identified as a Ruger PC Charger bearing serial number 913-21762.  The firearm appeared to be a genuine functioning firearm and was rendered safe.

24.    K9 Officer Barnes conducted a search of BUYNON's purse located in the rear passenger seat.  Within the purse were two loose small blue M-30 pills, a plastic bag containing small blue M-30 pills weighing eight grams (approximately 50 pills), and two bags of a green leafy substance consistent in appearance with marijuana.

### III.    Suspect Interviews

25.    WEAKLAND, ORTEGA, and BUYNON were detained and transported to the Sandia Police Department.  There, HSI SA Ross Wilson and I conducted interviews of all three individuals.

26.    Before officers could advise ORTEGA of his *Miranda* rights, ORTEGA stated he refused to answer any questions and asked agents to take him to jail.  Agents promptly terminated the interview and did not ask ORTEGA any questions.  ORTEGA was placed in a holding cell.

27.    BUYNON was advised of her *Miranda* rights, stated she understood, and waived her rights, agreeing to speak with agents.  BUYNON stated she knew ORTEGA was a narcotics dealer, and that she loved him.  BUYNON stated she was addicted to fentanyl pills and was supplied by WEAKLAND and ORTEGA.

28.    WEAKLAND was advised of his *Miranda* rights, stated he understood, and waived his rights, agreeing to speak with agents.  WEAKLAND admitted he was a narcotics user and that he predominately used fentanyl pills.  WEAKLAND admitted he had smoked fentanyl pills that day and that approximately five or six pills within the vehicle belonged to him.  WEAKLAND

disclosed he had known ORTEGA[2] for several years and frequently worked as a courier and errand runner for ORTEGA. WEAKLAND stated ORTEGA would reimburse these errands with small sums of cash ($20 to $100) or through small quantities of fentanyl pills.

29.     WEAKLAND further stated ORTEGA was a narcotics and firearms dealer. WEAKLAND stated that on the day of the traffic stop, he picked up ORTEGA and BUYNON from an Albuquerque hotel. Upon entering the vehicle, ORTEGA attempted to sell WEAKLAND the tan Sig Sauer P365 handgun for $300. WEAKLAND refused to purchase the firearm. Additionally, WEAKLAND stated ORTEGA retrieved a black backpack from the rear of the vehicle and showed WEAKLAND a black handgun with a laser sight.

## IV.    ORTEGA's Criminal History

30.     I reviewed ORTEGA's NCIC criminal history report, as well as New Mexico state court documents regarding ORTEGA's prior convictions. Based on these records, I learned that on January 30, 2022, ORTEGA was convicted of a felony drug trafficking offense, and on June 14, 2022, ORTEGA was convicted of possession of a controlled substance, both in the State of New Mexico. I also learned that ORTEGA was, at the time of the traffic stop, on conditions of release for other pending criminal charges in the State of New Mexico—specifically, felony possession of a controlled substance, and resisting, evading, or obstructing an officer, filed on April 25, 2024.

31.     HSI SA Wilson and I contacted Supervisory Assistant United States Attorney Louis Mattei, who approved a probable cause arrest of ORTEGA. ORETGA was transported to the Cibola County Correctional Center.

---

[2] WEAKLAND referred to ORTEGA by the nickname "Stacks" during the interview.

**CONCLUSION**

32.     Based on the forgoing information, there is probable cause to believe that on May 2, 2025, in the District of New Mexico, ORETGA violated 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), that being possession with intent to distribute 40 grams and more of fentanyl, and 18 U.S.C. § 924(c)(1)(A)(i), that being possessing a firearm in furtherance of a drug trafficking crime.

33.     This affidavit was reviewed and approved by AUSA Louis Mattei.

Respectfully submitted,

*Swanlynn Chico*

**Swanlynn Chico**
Special Agent
Bureau of Indian Affairs - DDE

Sworn telephonically, signed remotely, and transmitted by email on May 4, 2025.

*Laura Fashing*

**Laura Fashing**
United States Magistrate Judge

8